NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2420
_____

UNITED STATES OF AMERICA

v.

CATHERINE L. BRADICA,

Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. Action No. 06-07)
District Judge:  Honorable Gary L. Lancaster, Chief Judge
_____

Submitted Under Third Circuit LAR 34.1(a)
December 16, 2010
_____

Before:  SLOVITER, GREENAWAY, JR., and GREENBERG, Circuit Judges

(Opinion File: March 8, 2011)
_____

OPINION
_____

GREENAWAY, JR., Circuit Judge

Appellant Catherine Bradica ("Bradica") appeals the District Court's judgment,

entered on April 27, 2009.  Bradica was charged in a 39 count indictment, with multiple

counts of fraud and conspiracy.[1] On February 21, 2008, Bradica pled guilty, without the benefit of a plea agreement, to Counts 5-15, 22-27, 28-36, 38, and 39. The District Court granted the Government's motion to sever the counts to which Bradica pled guilty from the remaining counts of the indictment. The District Court dismissed the remaining Counts 1-4, 16-21 and 37 on January 30, 2009.

The District Court sentenced Bradica to concurrent 41-month terms of imprisonment for each of the counts of conviction. Bradica timely appeals the sentence. For the following reasons, we will affirm the District Court's Judgment.

## I. BACKGROUND

We write primarily for the benefit of the parties. We shall recount only the essential facts. Catherine Bradica ("Bradica") was employed by Capco Contracting ("Capco"), a privately held corporation in McKeesport, Pennsylvania.[2] Bradica was the Controller, second in charge, and oversaw Capco's financial, payroll, and accounting operations, including the issuance of expense checks.

The indictment alleged wrongdoing in three different Capco construction projects: the PNC Park baseball stadium in Pittsburgh; the Petersen Events Center at the University of Pittsburgh; and the reconstruction of the Pentagon in Washington, D.C.,

---

[1] Counts 1 through 27 charged mail fraud, in violation of 18 U.S.C. § 1341. Counts 28 through 36 charged major fraud against the United States, in violation of 18 U.S.C. § 1031. Counts 37 and 38 charged conspiracy, in violation of 18 U.S.C. § 371 and Count 39 charged tax conspiracy, in violation of 18 U.S.C. § 371.

[2] Capco entered into subcontracts with prime contractors to perform commercial painting and dry walling.

following the September 11, 2001 terrorist attacks (the Pentagon Renovation Program, or PENREN). Capco subcontracted to perform the following tasks: (1) prime, paint, and touch-up the steel designated for installation in the baseball stadium; (2) provide personnel, equipment, and material to perform touch-up painting on the construction of the Peterson Events Center; and (3) provide assistance to AMEC Construction Management, Inc.[3] ("AMEC") for repairs to the Pentagon.

Three other individuals were also indicted.[4] According to the indictment, Bradica and one of the co-defendants, Thomas Cosar, falsified, and directed other Capco employees to falsify, the contents of weekly time sheets prepared for work at these three construction sites. From October 16, 2001 through May 17, 2002, Capco (through Bradica), submitted 16 requests for payment, with summary invoices, certified payroll registers, and vendor invoices for materials purchased. The invoices reportedly totaled approximately $9,921,324.00.[5]

---

[3] AMEC Construction Management, Inc. is a large-scale construction management company based in Bethesda, Maryland.

[4] The other co-defendants were Thomas Cosar, the president and sole stockholder of Capco; Daniel Monte, primarily a project manager and painting superintendent for Capco; and Joseph Arena, employed as a senior project manager for AMEC, which subcontracted with Capco.

[5] This included falsely billed labor hours for people who had not worked at the Pentagon and did not receive the payment billed; falsely billed labor hours for Capco employees whose services had been diverted on the dates in question to perform work at other locations; and inflated hourly rates for certain employees.

Bradica admitted her guilt regarding PENREN, but did not admit to involvement in the PNC Park or Peterson Events Center projects.

Utilizing the 2007 Guidelines Manual, the Pre-sentence Investigation Report ("PSR") assigned a base offense level of 6 through application of U.S.S.G. § 2B1.1 and the grouping rules of U.S.S.G. §§ 3D1.2 and 3D1.4. The PSR then calculated loss under U.S.S.G. § 2B1.1(b)(1)(I) as $1,120,666.10. This resulted in an additional 16 level enhancement.[6] The PSR found that Bradica abused a position of trust and added an additional 2 levels, then applied a 2-level reduction for acceptance of responsibility, for an adjusted total offense level of 22. Bradica received a criminal history category of I. The resulting Guidelines range was 41 to 51 months of imprisonment. Bradica objected to the PSR, particularly the calculation of financial loss resulting from her actions (the "loss calculation"). Not only did Bradica object to the accuracy of the loss calculation, but she also asked for a downward departure due to an alleged overstatement of loss. She also requested a variance at sentencing.

On January 27, 2009, the District Court held an evidentiary hearing, in advance of sentencing. The purpose of the evidentiary hearing was to resolve the amount of loss and restitution issues. Specifically, the parties disputed whether or not Capco received payments on all of its invoices. The Government contended that the amount of loss was

---

[6] Pursuant to § 2B1.1(b)(1)(I), the offense level is increased by 16 when the loss exceeds $1,000,000 but is less than $2,500,000. The total offense level of 22 included losses related to PENREN, and also included losses related to the PNC Park and the Petersen Events Center projects.

4

more than $1 million, and that $807,000 of that amount was attributable to the Pentagon project. Bradica contended that the amount of loss on the Pentagon project was zero.

Based on information provided to the District Court during the evidentiary hearing, the financial loss to AMEC on the Pentagon project was $153,536 and the loss to PENREN was approximately $653,624, totaling $807,160. In addition, Capco over-billed on the PNC Park project by approximately $283,940.95. The Peterson Events Center at the University of Pittsburgh contracted with Havens Steel Company to erect, prepare, and paint the structural steel for the facility. Havens issued a purchase order to Capco, and then Capco fraudulently billed Havens for a total loss of $19,815.43. Capco also committed tax fraud, resulting in a total employment tax loss of $29,787.73.

After the evidentiary hearing, the District Court issued its Tentative Findings and Rulings, finding in favor of the Government and supporting the conclusions of the PSR. The District Court stated that it found the Government's proof of loss calculation credible, and determined that it would use the calculated amount in determining Bradica's sentence. The District Court also denied Bradica's request for a downward departure and a downward variance. Bradica filed a timely appeal.

## II.   JURISDICTION

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

5

### III.    STANDARD OF REVIEW

A District Court's sentencing procedure is reviewed for abuse of discretion.  Gall v. United States, 552 U.S. 38 (2007).[7]  On abuse of discretion review, the Court of Appeals gives due deference to the district court's sentencing decision.  Id. at 52.

### IV.    ANALYSIS

Bradica has requested both a variance and a downward departure.  She contends that the District Court: (1) overstated the seriousness of the offense because of its inaccurate loss calculation; (2) committed error by failing to sufficiently consider and discuss, on the record, its reasons for rejecting her request for a downward departure; (3) committed procedural error by failing to consider one of the § 3553(a) factors; and (4) failed to issue a ruling on the downward variance she had requested.

Bradica contends that the District Court violated this Court's decision in United States v. Lofink, 564 F.3d 232 (3d Cir. 2009), by denying her request for a downward departure in its Tentative Findings and Rulings.  Bradica contends that the denial of her request and the alleged Lofink violation warrant reversal. (Appellant's Br. at 38.)

---

[7]  The Government contends that the standard of review is plain error, because Bradica did not object at the sentencing hearing.  See United States v. Lloyd, 469 F.3d 319, 321 (3d Cir. 2006) (since the appellant did not object to the sentence, we review for plain error).  However, we find that Bradica did object.  In fact, Bradica objected at the evidentiary hearing before the Court released its Tentative Findings and Rulings (J. App. Vol. II 282), and in her sentencing memorandum. (J. App. Vol. III 483.)  In addition, the District Court acknowledged that Bradica's objections were preserved for appellate review.  (J. App. Vol. III 511.)

*Downward Departure*

A downward departure occurs when the sentence calculated, after granting a departure motion, is less than the bottom of the applicable Guidelines range. United States v. Vazquez-Lebron, 582 F.3d 443, 445 (3d Cir. 2009).

After the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), sentencing Guidelines were no longer deemed mandatory, instead they were deemed advisory. Since Booker, district courts have been provided with a three-step process for incorporating adequate consideration of the Guidelines into their sentencing procedures: (1) courts must calculate a defendant's Guidelines sentence precisely as they would have before Booker; (2) they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account the court's pre-Booker case law, which continues to have advisory force; and (3) courts are required to exercise their discretion by considering the relevant 18 U.S.C. § 3553(a) factors in setting the sentence they impose regardless of whether it varies from the sentence calculated under the Guidelines. United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006).

*Variance*[8]

A variance is based on the district court's consideration of the 18 U.S.C. § 3553(a) factors.[9] If granted, a variance results in a sentence that diverges from the original guidelines calculation.

At step 2 above, the district court decides whether a departure is warranted. At step 3, the district court determines whether a variance, after consideration of the § 3553(a) factors, is warranted. In <u>United States v. Gall</u>, 552 U.S. 38 (2007), the first and third steps were reinforced, and the Supreme Court clarified that a district court must consider all of the § 3553(a) factors. However, because the issue in <u>Gall</u> addressed a

---

[8] Bradica requested a downward variance on the same grounds upon which she had requested a downward departure, namely, that the loss calculation overstated the seriousness of the offense.

[9] The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed - - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant: and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for - - (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ; (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . [that] is in effect on the date the defendant is sentenced; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

variance, the opinion did not address the second step (granting a departure). In United States v. Wise, we stated that district courts must engage in the second step of the sentencing process, ruling on departure motions, and when a sentencing court fails to expressly rule on the merits of a departure motion, the need to consider all of the § 3553(a) factors is frustrated. 515 F.3d 207, 216 (3d Cir. 2008).

*Bradica's Claim Regarding the Loss Calculation*

On February 19, 2008, the Court severed the counts involving PNC Park and the Peterson Events Center from the counts involving the Pentagon project (PENREN) and later dismissed the PNC Park and Peterson Events Center counts, with prejudice. Bradica argues that since she did not plead guilty to the counts corresponding to two of the three projects, the loss from those projects should not be considered. The District Court did not consider the loss for the PNC Park or Petersen Events Center projects for purposes of the Tentative Findings and Rulings. (J. App. Vol. I 4 note 5.)

The PSR contained a calculated amount of loss of $807,161, in connection with the reconstruction of the Pentagon. Bradica claimed that the amount of loss, as calculated in the PSR, overstates the seriousness of her conduct and thus warranted both a downward departure and a downward variance.

To address this contention, the District Court held an evidentiary hearing, allowing both defendant and the Government to present evidence. The District Court then issued Tentative Findings and Rulings. Principally, the Court found that the Government's witnesses were credible, and that the Government met its burden of showing that Bradica

9

caused a loss of $807,161, in connection with the reconstruction of the Pentagon. Therefore, Bradica's claim that the loss calculation overstated the seriousness of her conduct is not valid. The loss ascribed to the Pentagon was attributable, based on the evidence, to Bradica.

*Bradica's Request for a Downward Departure*

Bradica next contends that the District Court failed to address her motion for a downward departure. However, in its Tentative Findings and Rulings, the District Court stated: "We also disagree with defendants that the amount of loss substantially overstates the seriousness of defendants' conduct and warrants a downward departure . . ." (J. App. Vol. I 8 n.6), thereby effectively denying the motion for downward departure. In her sentencing memorandum, submitted after the Tentative Findings and Rulings, Bradica again requested a downward departure, along with a downward variance.

In the instant case, we find that the District Court did rule on Bradica's departure motion, in its April 2, 2009, Tentative Findings and Rulings. At the sentencing hearing, the District Judge discussed the Guidelines range and explained how it was calculated. Next, the District Judge discussed the § 3553 (a) factors in detail, as described in Step 3. We find no discussion of Step 2 regarding the downward departure motion. Although we have not required district courts to use the terms, "departure" or "variance," we have noted that the use of these terms assists our review. Lofink, 564 F.3d at 239 (quoting United States v. Jackson, 467 F.3d 834, 837 n.2 (3d Cir. 2006)).

10

Although Bradica contends that this case conflicts with our holding in Lofink, we find the facts of the two cases distinct. In Bradica's case, we have been provided with enough information to determine how the District Court arrived at its sentence. The District Court considered the applicable Guidelines range at the time of sentencing, and took all of the § 3553(a) factors into consideration. However, in Lofink, we were unable to determine whether the Court denied the appellant's motion because it concluded there was no basis to grant the motion under §5K2.13 or because the Court exercised its discretion in not granting the motion. See Lofink, 564 F.3d at 240. We observed that even though the district court decided that some aspect of the case warranted a sentence below the original guidelines range, the court never concluded that no reduction was warranted. Id.

In Bradica, the District Court stated that "I have heard and considered the evidence and arguments, and I believe that the commission [sic] of the guidelines has determined the recommended sentence that is proper in this type of case even though the Guidelines are not mandatory but merely a recommendation." (J. App. Vol. III 535.)

The District Court in Bradica's case stated that "this sentence will adequately address the sentencing goals of punishment, rehabilitation and deterrence." Id. Therefore, although Bradica hinges her argument regarding her entitlement to a downward departure on what she considers to be the overstated loss calculation, the

11

District Court had already stated that it disagreed with Bradica's contention that the loss calculation was over calculated.[10]

We hold that the District Court considered Bradica's request for a downward departure and after a thorough evaluation of the facts, exercised its discretion in deciding that the evidence presented by Bradica did not warrant a downward departure. As we have stated, we have no authority to review discretionary denials of departure motions in calculating sentencing ranges. Jackson, 467 F.3d at 839.

*Bradica's Request for a Downward Variance and Consideration of the § 3553(a) Factors*

Bradica also contends that the District Court committed procedural error by failing to rule explicitly on her request for a downward variance and also by failing to consider, under § 3553(a)(1), the nature and circumstances of the offense. Bradica argues that both the Supreme Court and the Third Circuit have stated that the failure to address a requested basis for variance is reversible error. As such, her sentence must be vacated and the case remanded for resentencing.[11] We disagree.

We have stated that we are guided by the requirement that sentencing courts must give meaningful consideration to all of the factors in 18 U.S.C. § 3553(a). See United States v. Olhovsky, 562 F.3d 530, 546 (3d Cir. 2009) (citing United States v. Cooper, 437

---

[10] The District Court conducted a thorough analysis of the loss calculations and stated that it "disagreed with defendants that the amount of loss substantially overstates the seriousness of defendant's conduct . . ." (Appellee's Br. at 23.)

[11] Bradica cites no case law in support of her argument that her sentence must be vacated and the case remanded.

F.3d 324, 329 (3d Cir. 2006)); see also United States v. Grier, 475 F.3d 556, 571 (3d Cir. 2007) (holding that the touchstone of reasonableness is whether the record as a whole reflects rational and meaningful consideration of those factors.)  A district court's "failure to consider the § 3553(a) factors" can create a procedurally unreasonable sentence. United States v. Levinson, 543 F.3d 190, 195 (3d Cir. 2008) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)).

During the sentencing hearing, the District Court discussed the § 3553(a) factors in detail.  Indeed, the District Judge stated that he took "all relevant factors into account, especially the loss sustained and the requirement of restitution . . ." (J. App. Vol. III 521-25.)  Although Bradica contends that the District Court failed to address the nature and circumstances of the offense, we find this statement to be untrue.

The District Court thoroughly discussed the nature and circumstances of the offense, stating that: "(1) the offense was not violent in nature, but involved a scheme to defraud the government and private construction companies and trade unions; (2) the offense was ongoing in nature, as the fraudulent activities began in 2000 and continued for two years; (3) the offenses were related to a larger pattern of criminal activity, including elaborate schemes by defendant for false billing on contracts related to reconstruction of the Pentagon after September 11, 2001, and (4) the victims of the offense include the U.S. Department of Defense and AMEC Corporation, Dick Corporation, Barton Malow Company, International Union of Painters and Allied Trade District Council 57, and Havens Steel." (J. App. Vol. III 521-23.)

13

We find that the District Court's analysis of the §3553(a) factors made it clear that the District Judge listened and considered each of Bradica's arguments; particularly, the one she alleges was not discussed, the nature and circumstances of the offense. The record reflects the District Court's consideration of each of the § 3553(a) factors in its decision not to grant a downward variance. Therefore, the District Court did not commit procedural error, and the decision to deny Bradica's motion for a downward variance was procedurally reasonable.

As the Supreme Court held in Gall, a district court must consider all of the § 3553(a) factors. In keeping with that directive, the District Judge here correctly calculated the applicable Guidelines range and allowed both parties to present arguments as to what they believed the appropriate sentence should be. More important, the District Court considered all of the § 3553(a) factors, and documented his analysis of each factor. (See J. App. Vol. III 521-25.)

Since we find that the sentence was not procedurally unreasonable, the only question for us to resolve is whether the District Court abused its discretion in determining that the § 3553(a) factors supported a sentence at the bottom of, rather than below, the guidelines range. The District Court did not commit a procedural error; calculated the appropriate U.S. Sentencing Guidelines range; did not treat the Guidelines as mandatory; considered all of the 18 U.S.C. § 3553(a) factors; and selected a sentence based on appropriate facts in the record. In addition, the District Court adequately explained the sentence. Id. Because the District Court did not deviate from the

14

guidelines range, no explanation for any deviation is required.  Given the sentence's procedural reasonableness, the District Court did not abuse its discretion by denying the motion seeking a downward variance.

## IV. CONCLUSION

We find that the District Court addressed Bradica's request for a downward departure. Also, we find that the District Court's refusal to grant the motion for a downward departure did not transgress our holding in <u>Lofink</u>, and did not constitute either abuse of discretion or procedural error. Further, we find that the District Court thoroughly discussed the § 3553(a) factors in denying Bradica's motion for a downward variance. The sentence is procedurally reasonable. Reversal is not warranted in this case.

For these reasons, we will affirm the District Court's judgment.

16