NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1511
_____

UNITED STATES OF AMERICA

v.

RANDY HUCKS,
a/k/a
ABUBAKR MUHAMMED,
a/k/a
RANDY RANDOLPH HUCKS,
a/k/a
ABU BARR

Randy Hucks,

Appellant
_____

On Appeal from United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-11-cr-00326-001)
District Judge Anita B. Brody
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 23, 2014

Before:  FUENTES and FISHER, *Circuit Judges*, and STARK,[*] *District Judge*.

(Filed:  February 11, 2014)

_____

[*]The Honorable Leonard P. Stark, District Judge for the United States District Court for the District of Delaware, sitting by designation.

_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Appellant Randy Hucks appeals his conviction in the United States District Court for the Eastern District of Pennsylvania of two counts of mail fraud and his sentence to a 33-month term of incarceration. Hucks asserts three challenges: (1) that the Government produced insufficient evidence to sustain his conviction for mail fraud; (2) that the District Court miscalculated his advisory sentencing guidelines range; and (3) that the District Court imposed a procedurally unreasonable sentence. For the reasons that follow, we will affirm both Hucks's conviction and sentence.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Between November 1, 2010 and March 20, 2011, Hucks smuggled counterfeit pharmaceuticals from China to Philadelphia, Pennsylvania. In November 2010, a Customs and Border Protection officer conducted a search of a suspicious parcel shipped from Shanghai, China, as it passed through O'Hare International Airport in Chicago, Illinois. The package contained 3,040 tablets marked as Cialis, arranged in two-tablet

2

blister packs. Cialis is a medication manufactured by Eli Lilly & Co. ("Lilly") to treat erectile dysfunction.

The officer reported the package to a Homeland Security Investigations ("HSI") agent in Chicago, who subsequently forwarded the package to HSI Special Agent Thomas Acerno in Philadelphia. An analysis by the Forensic Chemistry Center at the Food and Drug Administration ("FDA") revealed that the tablets did not contain tadalafil, the active ingredient in Cialis. The FDA concluded that the pills found in the package were inconsistent with the composition of genuine Cialis.

On March 22, 2011, Agent Acerno searched a second package, finding 10,188 tablets purporting to be Viagra in four-tablet blister packs. Viagra, manufactured by Pfizer, Inc., is a prescription drug also used to treat erectile dysfunction. On March 30, 2011, the agents executed a search warrant for Hucks's home, finding this second package. The FDA Forensic Chemistry Center found that the pills in the second package were not genuine Viagra.

A grand jury returned a superseding indictment on April 12, 2012, charging Hucks with two counts of mail fraud, in violation of 18 U.S.C. § 1341 (Counts I and II); two counts of smuggling goods into the United States, in violation of 18 U.S.C. § 545 (Counts III and IV); and two counts of trafficking in counterfeit goods, in violation of 18 U.S.C. § 545 (Counts V and VI). Hucks was arrested on April 14, 2011 and confessed that he sold counterfeit Viagra and Cialis. He had ordered the counterfeit pills from China via the

website Alibaba.com for 50 cents per blister pack, which he resold for $5 per blister pack at flea markets, bars, and on the street.

At trial, a trademark attorney for Lilly testified that the pills appeared "virtually identical to our genuine Cialis product." JA at 142. Although the attorney noted imperfections, he testified that the tablets were the correct shape and color, and bore the trademarked stylized "C". The packaging presented itself as Cialis with the name "Lilly," as well as the trademarked swirl in the correct colors. The attorney testified that the counterfeit pills possessed all three of the registered Cialis trademarks, along with Lilly's trademark. He testified that the pills were, "in terms of quality of appearance[,] . . . a very high quality counterfeit." JA at 144.

A representative from Pfizer also testified, opining that the counterfeit pills were of reasonably good quality in terms of appearance because the pills appeared "very, very similar to the product we make." JA at 191. The counterfeit tablets were the correct shape and color, and possessed the trademarked "VGR 100" and "Pfizer" markings. The Pfizer representative testified that "[e]ven if you've seen the legitimate cluster pack before, you would think that this is probably real." JA at 190-91. The jury found Hucks guilty on both counts of mail fraud and smuggling goods into the United States, but acquitted him on the trafficking in counterfeit goods counts.

Following Hucks's conviction, the United States Probation Office prepared a Presentence Investigation Report ("PSR"). The PSR assigned Hucks a base offense level

4

of eight. *See* U.S.S.G. § 2B5.3(a). It then relied upon the retail price of genuine Viagra and Cialis to determine the infringement amount. *See* U.S.S.G. § 2B5.3 App. Note 2. Genuine Viagra tablets retail from $22 to $24 per tablet and genuine Cialis tablets retail for $29 per tablet. Therefore, the PSR calculated the total infringement amount of the 10,188 counterfeit Viagra pills ($224,136) and 3,040 counterfeit Cialis pills ($88,160) to be $312,296, resulting in a 12-level enhancement pursuant to § 2B1.1(b)(1)(G). The PSR also applied a two-level enhancement under § 2B5.3(b)(3) because the offense involved the importation of counterfeit goods. Hucks's adjusted offense level was 22 which, when coupled with his criminal history category of II, resulted in an advisory guidelines range of 46 to 57 months' imprisonment.

The District Court adopted the findings of the PSR but departed downward by three levels, concluding that the infringement amount substantially exceeded the actual pecuniary harm to Lilly and Pfizer. This resulted in an offense level of 19 and a corresponding guidelines range of 33 to 41 months. The District Court sentenced Hucks to a 33-month period of incarceration followed by a three-year term of supervised release, a $1,500 fine, and a $400 special assessment. On February 22, 2013, Hucks timely appealed his conviction and sentence.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

We review a challenge to the sufficiency of the evidence "in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt[] beyond a reasonable doubt." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (2013) (en banc) (quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)) (alterations in original; internal quotation marks omitted). We will uphold the jury's verdict so long as it passes the "bare rationality" test. *United States v. Benoit*, 730 F.3d 280, 290 (3d Cir. 2013) (quoting *Caraballo-Rodriguez*, 726 F.3d at 432). "The evidence does not need to be inconsistent with every conclusion save that of guilt if it does establish a case from which the jury can find the defendant guilty beyond a reasonable doubt." *Caraballo-Rodriguez*, 726 F.3d at 432 (citation and internal quotation marks omitted).

We review a sentencing court's factual findings related "to the Guidelines for clear error" and exercise "plenary review over a district court's interpretation of the Guidelines." *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007). We review the reasonableness of the sentence imposed for abuse of discretion. *United States v. Tomko*, 562 F.3d 558, 567–68 (3d Cir. 2009) (en banc) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).

## III.

Hucks argues that: (1) the evidence adduced at trial was insufficient to sustain his conviction for mail fraud under 18 U.S.C. § 1341; (2) the District Court miscalculated the

6

infringement amount under U.S.S.G. § 2B5.3, by relying on the retail value of genuine Viagra and Cialis; and (3) the District Court failed to give meaningful consideration to his sentencing arguments, as required by 18 U.S.C. § 3553(a)(6). We conclude that each challenge fails.

## A.

We construe the mail fraud statute, 18 U.S.C. § 1341, expansively "to prohibit all schemes to defraud by any means of misrepresentation that in some way involve the use of the postal system." *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 106 (3d Cir. 2012) (quoting *United States v. Olatunji*, 872 F.2d 1161, 1166 (3d Cir. 1989)) (quotation marks omitted). We will affirm a mail fraud conviction unless we determine that no rational jury could find that: "(1) there was a scheme to defraud; (2) the defendant acted with the intent to defraud; and (3) the defendant used the mails to further or carry out the scheme." *United States v. Riley*, 621 F.3d 312, 329 (3d Cir. 2010) (citing *United States v. Jimenez*, 513 F.3d 62, 81 (3d Cir. 2008)). We have recognized that a scheme to defraud by mail includes "any course of action to deprive another of money, property, or the intangible right to honest services through fraudulent representations reasonably calculated to deceive a person of 'ordinary prudence.'" *United States v. Ciavarella*, 716 F.3d 705, 728 (3d Cir. 2013) (citing *United States v. Pearlstein*, 576 F.2d 531, 535 (3d Cir. 1978); 18 U.S.C. §§ 1341, 1346).

7

Hucks contends that the evidence was insufficient to establish that he ever defrauded or intended to defraud his customers. Culled to its essence, his argument is that no reasonable person purchasing (purported) Viagra or Cialis outside a bar or club, at a flea market, or on the street would believe the products to be genuine, and that there is no evidence that Hucks falsely suggested to his customers that the pills were real. We have no difficulty rejecting this argument.

Addressing the latter point first, it is of no moment that the Government did not produce direct evidence of Hucks lying to his customers about the pills' provenance because the pills themselves betray the lie. As the representatives from Pfizer and Lilly testified, the tablets were near-perfect imitations of the genuine product. To the untrained eye, the subtle differences in packaging between Hucks's counterfeits and the real thing would have been undetectable. The jury very reasonably could have concluded that Hucks intended to pass off the products as the real thing, even in the absence of direct evidence of Hucks lying about their nature.

With respect to the former point, Hucks essentially asserts a theory of caveat emptor: any reasonably prudent individual purchasing these medications on the street from a huckster such as he would know that they were not getting the real thing. Therefore, in his view, he could not have had the intent to defraud. Of course, the fact that a fraud victim has their own gullibility to blame is no defense for the fraudster. *See United States v. Hoffecker*, 530 F.3d 137, 177 (3d Cir. 2008) (quoting *United States v.*

8

*Rennert*, 374 F.3d 206, 213 (3d Cir. 2004)). The "person of ordinary prudence" language that courts have imputed to the mail fraud statute, *see Ciaveralla*, 716 F.3d at 728, is intended, in part, to police the border between fraud and harmless sales puffing, *United States v. Coffman*, 94 F.3d 330, 334 (7th Cir. 1996). It is not a license for criminals to prey on people of "below-average judgment or intelligence" – those most in need of the law's protection. *Id.*

Hucks purchased thousands of high-quality counterfeit pills, packaged for retail sale in blister packs nearly identical to the packaging used by Lilly and Pfizer. It was not irrational for the jury to have inferred from this evidence that Hucks possessed the intent to defraud – indeed, the notion that Hucks would have gone to the trouble to purchase counterfeits with such verisimilitude only to sell them as generic "male enhancement" products is itself irrational. The evidence produced at trial was clearly sufficient to sustain his conviction for mail fraud, and we will affirm.

B.

Hucks challenges the method used by the District Court to calculate the infringement amount and the corresponding offense level under U.S.S.G. § 2B5.3. Specifically, he argues that the infringement amount should not have been measured by the value of the *infringed* item (i.e., genuine Cialis and Viagra), but rather by the value of the *infringing* item (i.e., counterfeit Cialis and Viagra). We disagree.

9

Section 2B5.3 of the Sentencing Guidelines addresses criminal trademark and copyright infringement, and incorporates the table in § 2B1.1 that provides for a gradually increasing offense level depending on the value of the loss. Application Note 2 of § 2B5.3 describes two methods for determining the loss amount in a trademark infringement case:

> (A) Use of Retail Value of Infringed Item. – The infringement amount is the retail value of the infringed item, multiplied by the number of infringing items, in a case involving any of the following:
>
> > (i) The infringing item . . . is, or appears to a reasonably informed purchaser to be, identical or substantially equivalent to the infringed item;
>
> . . .
>
> (B) Use of Retail Value of Infringing Item. – The infringement amount is the retail value of the infringing item, multiplied by the number of infringing items, in any case not covered by subdivision (A) of this Application Note . . . .

U.S.S.G. § 2B5.3 App. Note 2. Accordingly, Hucks's valuation theory applies only in those situations not contemplated by Subdivision (A) of Application Note 2. Here, the District Court found that the counterfeit pills were identical or substantially equivalent to the genuine article, and therefore applied Subdivision (A). We find nothing clearly erroneous about the District Court's determination that the counterfeit pills would to the reasonable observer appear to be identical or substantially equivalent to the real product. We will, therefore, affirm the District Court's calculation.

10

We ordinarily review the procedural reasonableness of a sentence for an abuse of discretion. *Tomko*, 562 F.3d at 567. Hucks claims to have presented a § 3553(a) sentencing disparity argument in his sentencing memorandum, which preserved this argument despite his failure to present it at the sentencing hearing. In *United States v. Sevilla*, 541 F.3d 226, 231-32 (3d Cir. 2008), we held that when a defendant raises an argument in a sentencing memorandum but the argument goes unacknowledged by the District Court at sentencing, no additional objection is necessary to preserve it for appellate review. The Government believes that decision to have been wrongly decided, and this Court will consider *Sevilla*'s vitality in an upcoming en banc rehearing. *See United States v. Flores-Mejia*, 531 Fed. App'x 222 (3d Cir. July 19, 2013), *reh'g en banc granted*, No. 12-3149 (Sept. 18, 2013).

But in reality, we need not wrestle with *Sevilla* and *Flores-Mejia* because Hucks failed even to present this argument in his sentencing memorandum. On appeal, Hucks contests the procedural soundness of his sentence on the basis that the District Court failed to consider the need to avoid "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The problem with Hucks's contention is that the disparity argument he raised in the District Court was part of a request for a downward departure. In his memorandum, he argued that "[a] sentence *in the guideline range proposed by the*

11

*Probation Officer* and the government would lead to sentencing disparity." JA at 320 (emphasis added). He then identified four cases from District Courts around the country purportedly imposing sentences for selling counterfeit Viagra and Cialis that were below Hucks's proposed guidelines range, and concluded that "[f]or all of the foregoing reasons this Court should *depart from the offense level calculated* on the basis of any infringement amount and vary from the applicable sentencing guideline range to impose a sentence of home confinement." *Id.* (emphasis added).

But, as the Government adroitly observes, Hucks received the downward departure he requested. The District Court stated that the guidelines "as calculated by the Probation Office are high," and, accordingly, granted a three-level departure and sentenced Hucks at the bottom of the new range. JA at 411. Hucks simply did not present to the District Court the § 3553(a) argument he now presses on appeal – indeed, nowhere in his sentencing memorandum does Hucks even discuss § 3553(a). Nor did his terse request, appended to the end of his memorandum, that the District Court vary from the applicable guidelines range suffice to preserve the argument. *United States v. Joseph*, 730 F.3d 336, 341 (3d Cir. 2013) (holding that simply raising an "issue" in the District Court "is insufficient to preserve for appeal all arguments bearing on that issue"). Accordingly, we will review the District Court's application of the § 3553(a) factors for plain error.

12

To satisfy our plain error doctrine, the error must be clear or obvious and it must affect substantial rights, which typically means that the error was prejudicial to the defendant. *United States v. Russell*, 564 F.3d 200, 203-04 (3d Cir. 2009) (quoting *United States v. Evans*, 155 F.3d 245, 251 (3d Cir. 1998)).  We find no error in the District Court's consideration of the factors under § 3553(a).  A district court need not "raise every conceivable issue on its own initiative or even make explicit findings as to each sentencing factor if the record makes clear that the court took all the factors into account." *United States v. Begin*, 696 F.3d 405, 411 (3d Cir. 2012).  In considering the nature and circumstances of the offenses, the District Court recognized the severity of the crime – Hucks intended to distribute unregulated pharmaceuticals, the contents of which were unknown and could have been harmful.  JA at 410.  The District Court found no contrition in Hucks's allocution, and stated that a within-guidelines sentence was necessary for deterrence and to protect the public. *Id.*  Hucks's counsel did not raise a disparity argument under § 3553(a).  "The District Court need not discuss and make findings as to each of the § 3553(a) factors[,] . . . [so long as it] gave meaningful consideration to the relevant § 3553(a) factors." *United States v. Handerhan*, 739 F.3d 114, 122 (3d Cir. 2014) (quoting *United States v. Jackson*, 467 F.3d 834, 841 (3d Cir. 2006)) (internal quotation marks omitted).  The District Court satisfied its obligations and did not plainly err in its consideration of the § 3553(a) factors.  Accordingly, we will affirm.

13

## IV.

For the reasons set forth above, we will affirm Hucks's conviction and sentence.