

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-9-2006

# USA v. Jackson

Precedential or Non-Precedential: Precedential

Docket No. 05-4091

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Jackson" (2006). *2006 Decisions.* Paper 145.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/145

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-4091

UNITED STATES OF AMERICA

v.

JOHNATHAN RYAN JACKSON,

Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 05-cr-00004)
District Judge: Honorable Paul S. Diamond

Submitted Under Third Circuit LAR 34.1(a)
September 28, 2006

Before: McKEE and AMBRO, Circuit Judges

RESTANI,[*] <u>Chief Judge, Court of International Trade</u>

(Opinion filed:  November 9, 2006)

Elizabeth T. Hey
   Assistant Federal Defender
Brett G. Sweitzer
   Assistant Federal Defender
David L. McColgin
   Assistant Federal Defender
   Supervising Appellate Attorney
Maureen Kearney Rowley
   Chief Federal Defender
Federal Community Defender Office
for the Eastern District of Pennsylvania
Suite 540 West - Curtis Center
601 Walnut Street
Philadelphia, PA  19106

         Counsel for Appellant

Patrick L. Meehan
   United States Attorney
Robert A. Zauzmer
   Assistant United States Attorney
   Chief of Appeals
Sarah L. Grieb
   Assistant United States Attorney

---

[*]Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

615 Chestnut Street, Suite 1250
Philadelphia, PA  19106

Counsel for Appellee

---

OPINION  OF  THE  COURT

---

AMBRO, Circuit Judge

We address in this case further aspects of the sentencing process for our Circuit in the wake of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005).  In so doing, we affirm the sentence imposed by the District Court.

## I. Factual and Procedural Background

Johnathan Ryan Jackson was arrested in 2004 after an investigation into reports of counterfeit $20 bills circulating in Pottstown, Pennsylvania.  As a result of this investigation, local police officers and U.S. Secret Service agents obtained a search warrant for an apartment unit in Pottstown.  Upon executing the search warrant, the police found Jackson inside the apartment with a color photocopier, a paper cutter and utility knife, white résumé paper, two individual counterfeit $20 bills, 24 other counterfeit $20 bills yet to be cut from printed sheets of the résumé paper, and $287 in legitimate U.S. currency (including two $20 bills that had served as patterns for the counterfeits).

3

Officers also found what appeared to be a line of powdered cocaine.

Jackson quickly admitted his crimes and, after indictment, notified the Government of his intent to plead guilty to the charges—one count each of counterfeiting obligations of the United States, 18 U.S.C. § 471, uttering counterfeit obligations, *id.* § 472, and dealing in counterfeit obligations, *id.* § 473. Jackson admitted to having produced approximately $50,000 in counterfeit currency over six months, selling much of it for about 30 cents on the dollar, and using the rest at flea markets and bars or with drug dealers. The full extent of Jackson's criminal behavior likely would not have been known but for his cooperation.

At Jackson's sentencing hearing, the District Court calculated the advisory Sentencing Guidelines range to be 37–46 months of imprisonment, followed by between two and three years of supervised release. The recommended range stemmed principally from the amount of counterfeit currency to which Jackson had admitted producing (adding six levels to the base offense level of nine) and by Jackson's criminal history category of VI (the highest possible). He also received a three-level reduction in the base offense level for his early guilty plea, thus sparing the Government the expense of preparing for and conducting a trial.

Jackson made two principal arguments to the District

4

Court in favor of a sentence below the advisory Guidelines range. First, he asserted that his "extraordinary acceptance of responsibility" warranted a downward departure pursuant to the Guidelines themselves. Second, Jackson noted many mitigating factors for the Court to consider in the exercise of its sentencing discretion, including an upbringing in which drugs were commonplace and contributed to his own addiction. Jackson's drug problems, in addition to providing the impetus for his counterfeiting activities, also led to a particularly acute eight-month period in which he committed all of the crimes accounting for his high Guidelines criminal history score. These mitigating factors, argued Jackson, warranted a sentence below the advisory Guidelines range.

After adopting the presentence report (with minor changes), the Judge began Jackson's sentencing hearing as follows:

> Under the Supreme Court's decision in *Booker*, the guidelines are advisory, not mandatory. Accordingly, in reviewing the revised presentence investigation report, I have considered the guideline range in the report as just one of many factors, including the nature and circumstances of the offense, and the history and characteristics of the defendant, the pertinent sentencing commission policy statements, such as the need to avoid unwarranted sentencing disparities and the

5

need to provide restitution to victims, the need for the sentence to provide for just punishment for the offenses charged, the need to provide adequate deterrence to criminal conduct, the need to promote respect for the law, and the need to protect the public from further crimes of the defendant.

Next, Jackson's attorney presented the arguments noted above, followed by a response from the attorney for the United States. The Judge then imposed Jackson's sentence of 37 months (the bottom of the advisory Guidelines range), followed by three years of supervised release, and the mandatory special assessment of $300. (No fine was imposed due to Jackson's inability to pay.) The Judge also recommended to the Bureau of Prisons that Jackson participate in drug and psychological treatment programs. Explaining Jackson's sentence, the Judge said:

Mr. Jackson, you've committed very serious crimes, as I've described above. You've pled guilty to three counts of counterfeit currency-related crimes.

I considered the following factors as significant in determining the sentence that I will impose: your seven prior adult convictions [and] that, in 2000, you were twice convicted of

aggravated assault, and these crimes involved violence.

I have also considered the very persuasive comments made by your very capable counsel. I have considered the circumstances of your upbringing, including your parents' drug addiction, and your financial circumstances.

Jackson makes two claims on appeal: (1) that the District Court erred by failing explicitly to rule on his motion for a downward departure from the initial Guidelines range, and (2) that the Court did not adequately consider all of the relevant factors of 18 U.S.C. § 3553(a) in refusing to vary his sentence from that range.[1]

## II. Discussion

In *United States v. Gunter*, 462 F.3d 237 (3d Cir. 2006), we made explicit the three-step process that District Courts in this Circuit should follow after the Supreme Court's ruling in *Booker*:

---

[1]The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1). *See United States v. Cooper*, 437 F.3d 324, 327–28 & n.4 (3d Cir. 2006).

(1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.

(2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.

(3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*Id.* at 247 (quotation marks, brackets, and citations omitted) (citing *United States v. King*, 454 F.3d 187, 194, 196 (3d Cir. 2006); *Cooper*, 437 F.3d at 329, 330).

The two points of error that Jackson presses in this appeal fall into the second and third steps set out in *Gunter*. The first alleged error relates to a Guidelines "departure," and the second to a Guidelines "variance."[2] We address each in turn.

------

[2]It has been our practice to refer to sentences outside the Guidelines range that are given for reasons contemplated by the

8

### A. *Gunter*'s Step Two: Guidelines Departures

Pre-*Booker*, district courts had the (limited) authority to depart from the mandatory Guidelines range if they found "that there exist[ed] an aggravating or mitigating circumstance . . . of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that . . . should result in a sentence different from that described." U.S.S.G. § 5K2.0(a)(1).[3]  Our Court's jurisdiction to review the denial of such departures depended on a district court's reason for denial.  If the judge believed s/he could not legally depart on

Guidelines themselves (under U.S.S.G. § 4A1.3 and Ch. 5, Pt. K) as "departures," and sentences outside the Guidelines range that are given in the exercise of a district court's discretion pursuant to *Booker* (which may not have been supported by our departure jurisprudence) as "variances."  *See United States v. Vampire Nation*, 451 F.3d 189, 195 n.2 (3d Cir. 2006); *see also Gunter*, 462 F.3d at 247 n.10; *King*, 454 F.3d at 196 n.5.  It would aid our review of criminal sentences if district courts and counsel employed this terminology as well.

[3]Courts were expected "rarely" to give a Guidelines departure.  *See* U.S.S.G. § 5K2.0, comment.  And so it was.  *See* United States Sentencing Commission, "Federal Sentencing Statistics by State, District & Court," Fiscal Year 2003, at 11 (showing that non-Government-initiated downward departures were granted in only 7.5% of cases nationally and in 7.4% of c a s e s    i n    o u r    C i r c u i t ) ,    *a t* http://www.ussc.gov/JUDPACK/2003/3c03.pdf.

the ground asserted, we had jurisdiction to review for legal error; if, instead, the judge recognized her/his authority to depart but chose not to do so, we lacked jurisdiction to review that decision. *United States v. Denardi*, 892 F.2d 269, 271–72 (3d Cir. 1989) (citing 18 U.S.C. § 3742); *see also United States v. D'Angelico*, 376 F.3d 141, 141 (3d Cir. 2004); *United States v. Allen*, 223 F.3d 239, 247 (3d Cir. 2000); *United States v. Mummert*, 34 F.3d 201, 205 (3d Cir. 1994). Not surprisingly, we needed district judges to "state expressly whether [their] denial of [a] defendant's departure request was based on legal or discretionary grounds." *Mummert*, 34 F.3d at 205; *see D'Angelico*, 376 F.3d at 141–42. If we were unable to discern the basis for a court's denial of a departure motion, remand was the remedy. *United States v. Evans*, 49 F.3d 109, 112 (3d Cir. 1995); *Mummert*, 34 F.3d at 205.

Again, our rule mandating an unambiguous record for rulings on departure motions derived from the need to determine whether we had jurisdiction to review a sentence within the Guidelines range. After *Booker*, however, we have jurisdiction to review *all* criminal sentences for reasonableness, even those that result from the exercise of a district court's discretion to set a sentence within the Guidelines range. *See Cooper*, 437 F.3d at 326–28. Still, the clear intent of the remedial opinion in *Booker* was for the process of calculating the Guidelines to continue operating as before. *See Booker*, 543 U.S. at 258–62 ("The remainder of the [Sentencing Reform] Act functions independently." (internal quotation marks omitted)); *Gunter*,

10

462 F.3d at 247 ("Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*. In doing so, they must formally rule on the [departure] motions of both parties . . . ." (citations and internal quotation marks omitted)).[4]

Not for jurisdictional reasons, but rather because the Guidelines still play an integral role in criminal sentencing, *see* 18 U.S.C. § 3553(a)(4); *Booker*, 543 U.S. at 258–65; *Cooper*, 437 F.3d at 330–31, we require that the entirety of the Guidelines calculation be done correctly, including rulings on Guidelines departures.[5] Put another way, district courts must

_____

[4]This does not mean, of course, that nothing about the sentencing process has changed. The significance of *Booker*—what resuscitated the Guidelines from unconstitutionality—is that once the Guidelines range has been calculated, a sentencing court now has discretion to vary from that range. This critical aspect of *Booker* is embodied in step three of *Gunter*. *See infra* Part II.B.

[5]For these reasons, we disagree with the Courts of Appeals for the Seventh and Ninth Circuits, which have ruled Guidelines departures obsolete in the wake of *Booker*. *See United States v. Mohamed*, 459 F.3d 979, 985–87 (9th Cir. 2006); *United States v. Arnaout*, 431 F.3d 994, 1003–04 (7th Cir. 2005).

At least six other circuits essentially employ the same approach to departures as we do, and one other has fashioned a modified (but continuing) role for Guidelines departures. *See*

11

still calculate what the proper Guidelines sentencing range is, otherwise the Guidelines cannot be considered properly at *Gunter*'s third step. *See* 18 U.S.C. § 3553(a)(4); *United States v. Zeigler*, 463 F.3d 814, 819 (8th Cir. 2006) (Hansen, J., concurring) ("Generally, if the district court errs in applying the Guidelines at step one or fails to consider a requested departure at step two, we cannot conduct a reasonableness review because the district court's critical starting point, a correctly determined advisory Guidelines range, may be flawed."); *Crawford*, 407 F.3d at 1178–79; *Hawk Wing*, 433 F.3d at 631 ("When a court of appeals reviews a district court's sentencing determination for reasonableness, the correct guidelines range is still the critical starting point for the imposition of a sentence." (internal quotation marks omitted)). The scenario is simple: error entering this sentencing step may presage the sentence ultimately set. Pre-*Booker* law regarding Guidelines departures,

---

*United States v. Wallace*, 461 F.3d 15, 32 (1st Cir. 2006) (citing *United States v. Dixon*, 449 F.3d 194, 203–04 (1st Cir. 2006)); *United States v. McBride*, 434 F.3d 470, 474–77 (6th Cir. 2006); *United States v. Hawk Wing*, 433 F.3d 622, 631 (8th Cir. 2006); *United States v. Selioutsky*, 409 F.3d 114, 118–19 (2d Cir. 2005); *United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005); *United States v. Villegas*, 404 F.3d 355, 361–62 (5th Cir. 2005); *see also United States v. Moreland*, 437 F.3d 424, 432–33 (4th Cir. 2006) (describing a process in which Guidelines departures are considered only after a district court determines that the initial Guidelines calculation does not serve the § 3553(a) factors).

12

therefore, necessarily informs the sentencing process—for district courts and for us. *Gunter*, 462 F.3d at 247; *King*, 454 F.3d at 196.

Jackson argues that the District Court here erred by never ruling on his motion for a downward departure based on his "extraordinary acceptance of responsibility." *See* U.S.S.G. § 5K2.0; *Evans*, 49 F.3d at 114–15; *United States v. Lieberman*, 971 F.2d 989, 994–96 (3d Cir. 1992). We agree that the record reveals no such ruling. Failure to rule on a Guidelines departure motion indeed would seem opposed to our pre-*Booker* precedent; moreover, it would seem contrary to step two in *Gunter*. Our pre-*Booker* jurisprudence, however, also provided that we would not remand for re-sentencing when the Government's arguments to the district court "concede[d] the plausibility of the downward departure." *D'Angelico*, 376 F.3d at 142. In those cases "it seem[ed] quite likely that the district court's refusal to depart . . . was discretionary," and thus we would infer that the departure motion had been denied by the court in recognition of its ability to depart had it chosen to do so. *Mummert*, 34 F.3d at 205; *see D'Angelico*, 376 F.3d at 142. This is still true post-*Booker* for purposes of *Gunter*'s second step.

The Eighth and Eleventh Circuits (at least) have ruled that, as it was pre-*Booker*, courts of appeals still have no authority to review discretionary denials of departure motions in calculating sentencing ranges. *See United States v. Morell*, 429

13

F.3d 1161, 1164 (8th Cir. 2005) ("The decision not to depart is not reviewable under 18 U.S.C. § 3742." (citing *United States v. Frokjer*, 415 F.3d 865, 875 (8th Cir. 2005), which observed that §§ 3742(a) and (b) were not disturbed by the Supreme Court's ruling in *Booker*)); *see also Crawford*, 407 F.3d at 1178. We express no opinion on that specific question. But because it is our purpose to have *Gunter*'s first two steps track pre-*Booker* practice, we shall continue not to disturb a district court's discretionary denial of a departure motion.[6]

---

[6]This applies post-*Booker* only to the calculation of the Guidelines range at step two, however. The process is not complete there, as step three requires our review of the sentence against the several § 3553(a) factors, only one of which is the Guidelines range. *See infra* Part II.B.

As for how we now review non-discretionary denials (*i.e.*, where a sentencing court believes that the Guidelines do not contemplate a departure at step two) or grants of departure motions, the issue is not presented in this case. For completeness, though, we note that, pre-*Booker*, these district court decisions had always been subject to some form of review. *See* 18 U.S.C. § 3742(e) (providing for *de novo* review of Guidelines departures); *Koon v. United States*, 518 U.S. 81, 96–100 (1996) (providing for review of departures under an abuse of discretion standard, prior to the amendment of § 3742(e) in 2003). Given what we have said about the significance of a correct Guidelines calculation as a starting point in the determination of a criminal sentence, these determinations likely should continue to be reviewed so as to ensure the proper Guidelines range calculation.

14

In this case, the Government argued to the District Court as follows:

> I don't know if the defendant is pushing for the extraordinary acceptance of responsibility. I didn't hear any argument on that today. But we would oppose it, your Honor, because the cases that he cites do not rise -- are a much higher level of acceptance of responsibility than the defendant making an admission at the time of this arrest[, as in Jackson's case].

We could, of course, eventually rule that some errors at this second step can be harmless, as the sentence imposed after a district court exercises its discretion in step three (regardless of its decision at step two) is subject to our reasonableness review. *See, e.g.*, *United States v. Robinson*, 433 F.3d 31, 35 (1st Cir. 2005); *United States v. Long Soldier*, 431 F.3d 1120, 1122 (8th Cir. 2005); *cf. Williams v. United States*, 503 U.S. 193, 202 (1992) (holding, pre-*Booker*, that "once the court of appeals has decided that the district court misapplied the Guidelines, a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless, *i.e.*, that the error did not affect the district court's selection of the sentence imposed"). *But see United States v. Hillyer*, 457 F.3d 347, 351–53 (4th Cir. 2006) (remanding for resentencing without a harmless error analysis); *United States v. Fuller*, 426 F.3d 556, 562 (2d Cir. 2005) (rejecting harmless error review for erroneous grant of Guidelines departure). As noted above, this issue is not presented here; consequently, we do not decide it.

15

Though one might contend that the Government intended its argument to speak to the District Court's legal ability to grant a Guidelines departure at step two, we think not. We believe rather that the Government was arguing that Jackson's acceptance of responsibility was not extraordinary enough to deserve a departure. This was enough for the Judge to have recognized the *possibility* of a departure in calculating the Guidelines range on the basis of Jackson's acceptance of responsibility. *Cf. Mummert*, 34 F.3d at 205 ("Since . . . the government apparently acknowledged at the time of sentencing[] that a downward departure for 'diminished capacity' is permissible under some circumstances, it seems quite likely that the district court's refusal to depart on this ground was discretionary.").

Given the continued importance of a correct Guidelines calculation (including rulings on departure motions), it may be, as before *Booker*, that remand would have been appropriate here. Even post-*Booker*, having to infer the District Court's thinking is "not our preferred course." *See id.* (admonishing counsel to ensure that the record is not ambiguous in order to facilitate appellate review). Yet pre-*Booker* law regarding Guidelines departures enables us to infer meaning from the District Court's actions in this circumstance. Consequently, there was no error at step two.

## B. *Gunter*'s Step Three: Guidelines Variances

16

In *Cooper*, we set out the standard by which we will review the reasonableness of a district court's post-*Booker* exercise of discretion when imposing a criminal sentence:

> The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors.[7]    The court need not discuss every

---

[7]The factors set out in 18 U.S.C. § 3553(a) are:
(1) the nature and circumstances of the offense and the characteristics of the defendant;
(2) the need for the sentence imposed—

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;
(4) the kinds of sentence and sentencing range established for—

> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;

17

argument made by a litigant if an argument is clearly without merit. Nor must a court discuss and make findings as to each of the § 3553(a) factors if the record makes clear the court took the factors into account in sentencing. Nor will we require district judges to routinely state by rote that they have read the *Booker* decision or that they know the sentencing guidelines are now advisory.

On the other hand, a rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises "a ground of recognized legal merit (provided it has a factual basis)" and the court fails to address it. As the Court of Appeals for the Seventh Circuit explained, "we have to satisfy ourselves, before we can conclude that the judge did not abuse his discretion, that he

_____

(5) any pertinent policy statement . . . issued by the Sentencing Commission . . . that . . . is in effect on the date the defendant is sentenced[;]
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

> exercised his discretion, that is, that he considered
> the factors relevant to that exercise."

437 F.3d at 329 (citations omitted) (quoting *United States v. Cunningham*, 429 F.3d 673, 379 (7th Cir. 2005)). In a footnote immediately following this discussion, we said: "On this issue, we disagree with the decision of the Court of Appeals for the Eleventh Circuit in *United States v. Scott*, [426 F.3d 1324, 1329–30 (11th Cir. 2005),] where the court held [that] a district court's statement that it considered both the defendant's arguments and the § 3553(a) factors at sentencing is by itself sufficient for *Booker* purposes." *Cooper*, 437 F.3d at 329 n.6. Instead, the record must show a true, considered exercise of discretion on the part of a district court, including a recognition of, and response to, the parties' non-frivolous arguments. *See United States v. Charles*, No. 05-5326, slip op. at 8–12 (3d Cir. Nov. 9, 2006).

Jackson argues that the District Court here failed to consider adequately the § 3553(a) factors and to explain how it determined Jackson's sentence in light of those factors and his counsel's arguments relating to them. He claims that had the Court properly done so, it would have chosen to vary from the recommended Guidelines range when imposing his sentence. The rote recitation of the § 3553(a) factors at the outset of the sentencing hearing, claims Jackson, does not show that the Court truly weighed his arguments in light of those factors. This point of error implicates *Gunter*'s third step.

19

If the record revealed only what Jackson contends, he would be correct. Merely reciting the § 3553(a) factors, saying that counsel's arguments have been considered, and then declaring a sentence, are insufficient to withstand our reasonableness review. *See id.* at 329 & n.6. In Jackson's case, however, the District Court in fact addressed both of the arguments his counsel raised in support of a variance from the Guidelines: their over-representation of his criminal history and Jackson's difficult childhood and resultant drug addiction. Immediately prior to sentencing Jackson to 37 months' imprisonment, the Judge said as to the first argument, "I considered the following factors as significant in determining the sentence that I will impose: your seven prior adult convictions [and] that, in 2000, you were twice convicted of aggravated assault, and these crimes involved violence." As to the second, the Court said, "I have considered the circumstances of your upbringing, including your parents' drug addiction, and your financial circumstances."

The reference to Jackson's "seven prior adult convictions," two of which "involved violence," indicates that the Judge did not believe Jackson's criminal history to be over-represented in the Guidelines calculation. Likewise, the Judge's reference at the moment of sentencing to Jackson's individual mitigating circumstances belies any contention that they were ignored. Though the Court's remarks were quite brief, brevity is not error *per se*. What matters is that the Court specifically addressed Jackson's non-frivolous arguments and that it did so

20

in a way that allows us to review the sentence for reasonableness.[8]

## III. Conclusion

Because we are satisfied that the District Court "touch[ed] all the bases required," *King*, 454 F.3d at 196, and exhibited sufficient consideration of Jackson's arguments to allow our review of its actions, we affirm the sentence imposed.

---

[8]Though the District Court never addressed Jackson's "extraordinary acceptance of responsibility" in terms of a Guidelines *variance* (*Gunter*'s step three), neither did his attorney address it in that context; Jackson only pressed that argument in terms of a Guidelines *departure* (*Gunter*'s step two). *See supra* Part II.A. Had it been otherwise, however, the District Court would not have been precluded from considering Jackson's early cooperation when deciding whether to exercise its discretion to vary from the advisory Guidelines range. *See Gunter*, 462 F.3d at 247–49; *McBride*, 434 F.3d at 476 ("[M]any of the very factors that used to be grounds for a departure under the Guidelines are now considered by the district court—with greater latitude—under section 3553(a).").