NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2754
_____

UNITED STATES OF AMERICA

v.

GARRETT BAUER
a/k/a Mr.G

GARRETT BAUER,
                                         Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-11-cr-00842-001)
District Judge:  Honorable Katharine S. Hayden
_____

Submitted Under Third Circuit LAR 34.1(a)
April 25, 2013

Before:  JORDAN, GREENBERG and NYGAARD, *Circuit Judges*.

(Filed: June 27, 2013)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Garrett Bauer appeals the judgment of the United States District Court for the District of New Jersey sentencing him to 108 months' imprisonment for his participation in an insider trading conspiracy. For the reasons that follow, we will affirm.

## I.     Background

Bauer and his two coconspirators, Matthew Kluger and Kenneth Robinson, conducted one of the longest-running insider trading scheme ever uncovered in the United States. The scheme began in the summer of 1994, when Kluger, then a summer associate at a prominent New York City law firm, approached Robinson about trading on inside information that Kluger obtained through his mergers and acquisitions work. Robinson then went to Bauer, a full-time securities trader, who agreed to trade on Kluger's inside information. The three executed that agreement for most of the next 17 years.[1] Kluger would obtain information about planned merger and acquisition activities of public companies through his work at various law firms, which he then provided to Robinson, specifying the number of shares of the target company he wished to purchase. Robinson, in turn, would pass the information to Bauer, who used his trading accounts to purchase shares for the coconspirators. Once the relevant corporate transaction was announced, Bauer would sell those shares, resulting in substantial profits. From 1994 to 2011, those illicit transactions produced gains of at least $37 million. Although he

---

[1] There was a short interruption in the scheme from August 2002 to late 2005, when Kluger worked in a position in which he could not access inside information.

2

transferred some of that money to Kluger and Robinson – paying them with cash drawn from numerous ATMs to evade detection by law enforcement – Bauer retained the "lion's share," personally netting about $25 million. (App. at 172.)

On several occasions throughout the course of the conspiracy, Bauer's trading activities raised red flags with regulators, prompting the conspirators to take additional precautions to avoid detection, such as communicating by disposable prepaid cell phones. On March 8, 2011, law enforcement officers executed a search warrant of Robinson's home and questioned him about Bauer's suspicious trading activity. Robinson subsequently cooperated with law enforcement and had several recorded telephone conversations with Bauer. In one of the recorded conversations, Bauer made numerous statements about sabotaging the government's investigation. He admitted that he destroyed his disposable cell phone, and also suggested that Robinson burn $175,000 in cash that may have contained Bauer's fingerprints. In another conversation, he assured Robinson that he would not cooperate in the investigation, saying "no matter what happens I will never mention you and never mention him [Kluger] as doing anything." (App. at 176.) He further promised Robinson that he would lie if questioned by the government about his large cash withdrawals, and would even tell investigators that he "bought prostitutes if it comes down to it" rather than admit to the actual crime. (App. at 178.)

Bauer was arrested on April 6, 2011, and he promptly decided to cooperate fully with the government, explaining the entire insider trading scheme to law enforcement officers. He was charged with one count of conspiracy to commit securities fraud, in

3

violation of 18 U.S.C. § 371 (Count One); one count of securities fraud in violation of 15 U.S.C. §§ 78j(b), 78ff (a) and 17 C.F.R. § 240.10b-5 (Count Two); one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Three); and one count of obstruction of justice, in violation of 18 U.S.C. § 1512(c)(2) (Count Four), and on December 8, 2011, he pled guilty to all counts. As part of his plea agreement, and pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, Bauer agreed to forfeit $25 million of the insider trading proceeds that had been seized by the government.

Bauer was sentenced on June 4, 2012. According to the presentence report ("PSR"), his base offense level under the United States Sentencing Guidelines was 30, subject to a two-level enhancement for his money laundering conviction, pursuant to U.S.S.G § 2S1.1(b)(2)(B), and a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. The PSR also recommended a three-level reduction for acceptance of responsibility, resulting in a total offense level of 31. Based on Bauer's criminal history category of I, his advisory guidelines range for imprisonment was 108 to 135 months. Bauer did not challenge that recommended range, but he submitted a sentencing memorandum requesting a downward variance due to his cooperation with law enforcement, his extensive charitable activities, and the "extraordinary acceptance of responsibility" reflected in his efforts to deter others from insider trading by giving

4

numerous public presentations at schools and organizations.[2] (Appellant's Opening Br. at 9.) He also argued that a sentence within the guidelines range would produce a disparity among defendants who engaged in similar conduct, and that such a sentence was unnecessary due to the low likelihood that he would become a recidivist. Bauer reiterated those arguments during the sentencing hearing, but the District Court declined his request for a variance, instead sentencing him to concurrent sentences of 60 months' imprisonment on Count One and 108 months' imprisonment on each of the remaining counts, for a total term of imprisonment of 108 months – the bottom of the recommended range. The Court also imposed three years of supervised release and a special assessment of $400. Bauer then filed this timely appeal.

## II.    Discussion[3]

On appeal, Bauer challenges the procedural and substantive reasonableness of his sentence. He argues that the District Court erred procedurally by denying his request for

---

[2] Following his arrest, Bauer gave a total of 148 lectures at various universities, professional schools, and financial organizations regarding the negative impact of insider trading.

[3] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review the District Court's legal findings *de novo*, but review its factual findings for clear error. *United States v. Dullum*, 560 F.3d 133, 140 (3d Cir. 2009). We apply an abuse of discretion standard when reviewing the procedural and substantive reasonableness of a sentence. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). "[I]f the district court's sentence is procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence on that particular defendant… ." *Id.* at 568. "At both [the procedural and substantive] stages of our review, the party challenging the sentence has the burden of demonstrating unreasonableness." *United States v. Starnes*, 583 F.3d 196, 215 (3d Cir. 2009) (citing *Tomko*, 562 F.3d 558 at 567) (alteration in original) (internal quotation marks omitted).

a downward variance. Specifically, he contends that the Court "made clearly erroneous factual conclusions about [his] extraordinary acceptance of responsibility, failed to adequately consider his charitable activities, and utterly ignored other legitimate variance arguments" (Appellant's Opening Br. at 22-23), namely his cooperation with the government, his low risk of recidivism, and the relative severity of his sentence compared to those given for other similar offenses. He further argues that a term of 108 months' imprisonment is "greater than necessary to comply with the purposes of sentencing, and is therefore substantively unreasonable." (*Id.* at 23.)

In reviewing a sentence for procedural error, we examine "each step of the district court's sentencing process," to ensure that the district court "(1) correctly calculated the defendant's advisory Guidelines range, (2) appropriately considered any motions for a departure under the Guidelines, and (3) gave meaningful consideration to the sentencing factors set forth in 18 U.S.C. § 3553(a)." *United States v. Begin*, 696 F.3d 405, 411 (3d Cir. 2012). The third step in that analysis is at issue here. *See United States v. Jackson*, 467 F.3d 834, 837 & n.2 (3d Cir. 2006) (explaining that a "variances" are "given in the exercise of a district court's discretion," which is reviewed in the third step of the analysis). We have held that to demonstrate "meaningful consideration" of the § 3553(a) factors, a sentencing court "must acknowledge and respond to any properly presented sentencing argument which has colorable legal merit and a factual basis." *Begin*, 696 F.3d at 411 (internal quotation marks omitted). Nonetheless, the court need not discuss an argument that "is clearly without merit," nor must it "discuss and make findings as to each of the § 3553(a) factors if the record makes clear the court took the factors into

6

account in sentencing." *Jackson*, 467 F.3d at 841.  Put another way, "the record must show a true, considered exercise of discretion on the part of a district court, including a recognition of, and response to, the parties' non-frivolous arguments." *Id.*

The District Court here did exactly what the law requires.  In addition to twice emphasizing that it had read and considered Bauer's sentencing memorandum, the Court considered each of his arguments during the sentencing hearing.  During its discussion of the need for general deterrence, the Court considered and rejected Bauer's low risk of recidivism as a basis for a variance.  In fact, it specifically explained that "sending [a] clear signal" to the public required doing so "through the heart" of an individual defendant (App. at 199) – in this case one who the Court acknowledged had arguably "turned [his] li[fe] around" (App. at 206).  It is therefore apparent that the Court listened to the recidivism argument, and appreciated that Bauer was unlikely to reoffend, yet it found a within-guidelines sentence to be appropriate.  *Cf. United States v. Tomko*, 562 F.3d 558, 568 (en banc) (concluding that there is no procedural error when the sentencing court does not discuss a specific argument if "[t]he record makes clear that the sentencing judge listened to each argument" and rejected certain of them (alteration in original) (internal quotation marks omitted)).

As for Bauer's argument regarding his cooperation with the government, he barely mentioned that assertion during the sentencing hearing, and the Court implicitly rejected it by emphasizing his obstruction of justice – which cuts directly against his cooperation – as a reason for his sentence.  (*See* App. at 207 (explaining that although "Mr. Bauer has made a … valiant effort to distinguish himself," he also "immediately got into combat

7

mode in terms of protecting that money, by inveigling Mr. Robinson, by talking about burning massive amounts of money in order to keep his fingerprints from getting exposed").) The Court also engaged Bauer's counsel in a discussion of other insider trading cases, indicating that it considered the risk of sentencing disparities.[4] The record therefore reflects that the District Court recognized and responded to each of the arguments that Bauer claims was "ignored." (Appellant's Opening Br. at 22-23.)

Bauer further contends that the Court procedurally erred by relying on clearly erroneous findings of fact regarding the numerous lectures he gave. *See Tomko*, 562 F.3d at 567 (explaining that a sentence can be procedurally unreasonable if the court selected it "based on clearly erroneous facts"). The Court discussed the lectures extensively in its analysis, but ultimately did not find them sufficiently compelling to warrant a below-guidelines sentence. Specifically, the Court explained that, although Bauer was "certainly having an impact on those folks who listen to his lectures" (App. at 198), it was skeptical about "how much deterrent value" they had (App. at 207). The Court also criticized Bauer for emphasizing his "harrowing five days in detention" during the lectures, rather than focusing on the damaging effects of insider trading on the market, which would have been more "in the spirit of true remorse." (*Id.*) Bauer argues that those two findings – the minimal deterrent effect of the lectures and Bauer's lack of

---

[4] Moreover, a within-guidelines sentence does not generally cause disparities in sentencing, because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007). *Cf. United States v. Merced*, 603 F.3d 203, 222 (3d Cir. 2010) (noting "a colorable argument that an *outside*-the-Guidelines sentence will create a risk of such disparities" (emphasis added)).

8

remorse during them – are clearly erroneous. We cannot agree. The Court made "a refined assessment," based on its unique vantage point, as to the nature and effect of Bauer's lectures. *See Tomko*, 562 F.3d at 566 (explaining the rationale for our deferential standard of review). That assessment is reasonable and is supported by the record, and thus cannot be considered clearly erroneous. *See United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc) ("A finding is 'clearly erroneous' when[,] although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (alterations in original) (internal quotation marks omitted)).[5]

Having identified no procedural error in the District Court's sentence, we turn to Bauer's substantive reasonableness claim. He argues that a nine-year sentence is "unreasonably long" for a "44 year old first-time offender … who forfeited everything he netted in the offense … and who historically engaged in so much good for society." (Appellant's Opening Br. at 46.) But the District Court carefully balanced those mitigating factors against "the nature of the offense, persistence of the offenders and … the staggering amount of money that was made off these tips," ultimately concluding that

---

[5] Bauer also asserts that the District Court "failed to properly consider [his] remarkable charitable endeavors and made erroneous factual findings regarding them." (Appellant's Opening Br. at 42.) But the Court directly addressed Bauer's charitable work, concluding that it was not "compelling enough to overcome the need for the guidelines sentence." (App. at 209.) Bauer may disagree with that assessment, but he cannot argue that the Court failed to "acknowledge and respond to" his argument, *Begin*, 696 F.3d at 411 (internal quotation marks omitted), and thus there is no basis for finding procedural error.

9

the circumstances "warrant[ed] the low end of the guidelines but not a variance below the guidelines." (App. at 208.)   We cannot say that "no reasonable sentencing court" would have reached the same conclusion, *Tomko*, 562 F.3d at 568, and thus the sentence is substantively reasonable.[6]

## III.   Conclusion

For the forgoing reasons, we will affirm the sentence imposed by the District Court.

---

[6]   Because there is no basis for remand, we need not address Bauer's request that his case be assigned to a different judge for resentencing.