**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2946
_____

UNITED STATES OF AMERICA

v.

KEITH CANYON,
                Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 5-09-cr-00188-001)
District Judge: Mitchell S. Goldberg
_____

Submitted Under Third Circuit LAR 34.1(a)
July 12, 2013
_____

Before: GREENAWAY, JR., SHWARTZ, and BARRY, <u>Circuit Judges</u>

(Filed: July 25, 2013)
_____

OPINION
_____

SHWARTZ, <u>Circuit Judge</u>.

Appellant Keith Canyon pled guilty to charges arising from his participation in

two armed bank robberies and obstruction of justice as well as pleading <u>nolo contendere</u>

to witness tampering.  The District Court imposed a sentence of 200 months.  Canyon appealed his sentence.  We will dismiss the appeal for lack of jurisdiction.

**I.**

As we write primarily for the benefit of the parties, we recite only the essential facts and procedural history.  Canyon robbed the same bank in Reading, Pennsylvania on November 27, 2007, and March 19, 2008.  Canyon was indicted on two counts of armed bank robbery, in violation of 18 U.S.C. § 2113(d), and two counts of using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1).

After he was indicted, Canyon sent a letter to his former girlfriend in which he warned her not to speak to government agents.  Based on the letter, the grand jury returned a superseding indictment that included the bank robbery and firearm charges and added charges for obstruction of justice in violation of 18 U.S.C. § 1503(a) and witness tampering in violation of 18 U.S.C. § 1512(b)(3).  The government later moved to dismiss the firearm count arising from one of the bank robberies.  Canyon subsequently pled guilty to the three remaining counts relating to the bank robberies and to the obstruction of justice charge, and he pled nolo contendere to the witness tampering charge.

Before sentencing, Canyon filed a sentencing memorandum moving for, among other things, a downward departure based on: (1) his mental and emotional condition, including attention deficit hyperactivity disorder ("ADHD") and neurological deficits, pursuant to U.S.S.G. §§ 5H1.3 and 5K2.0; (2) his experience of childhood abuse and

2

neglect, including his absent father, abusive stepfather, and experience of violence, pursuant to U.S.S.G. §§ 5H1.3 and 5K2.0; and (3) the combination of those circumstances. In the alternative, he sought a variance on the same grounds.

The District Court held sentencing hearings on June 6, 2012 and July 3, 2012. Canyon presented testimony from Eric Mercer, a social worker and "mitigation specialist," and Dr. Kirk Heilbrun, an expert psychologist. Based on his interviews with Canyon and Canyon's relatives, Mr. Mercer described Canyon's underprivileged background and difficult childhood. Dr. Heilbrun testified to Canyon's low cognitive functioning, hostility, paranoid ideation, and impulse control difficulties, and recommended psychotherapeutic intervention and possibly medication. The government presented the testimony of the assistant manager of the bank that Canyon had twice robbed and Canyon's accomplice. Canyon also testified. The Court found that Canyon's offense level was 30[1] and he had a criminal history category of IV, which resulted in an advisory guideline range of 219 to 252 months.

Canyon's counsel then simultaneously argued his motion for a departure or a variance, noting "I think we can all acknowledge that something could be a variance or could be a departure and the arguments would be the same." App. 234. After the government responded to Canyon's arguments, the District Court denied the departure motion but granted a downward variance of 19 months, and imposed a sentence of 200 months.

---

[1] The District Court found that Canyon had not accepted responsibility for his crimes and therefore was not entitled to a two-point reduction in the guidelines calculation.

Defendant now appeals his sentence, arguing that the District Court "erred as a matter of law in effectively concluding that it lacked authority to depart downward," Appellant Br. 21, and therefore "failed to conduct the appropriate discretionary review of the evidence." Id. at 23, 25. He contends that the Court should have granted a downward departure based on: (1) his "extraordinary mental and emotional conditions," including his ADHD, neurological deficits caused by traumatic brain injury, and the exacerbating effects of the physical abuse and neglect he suffered as a child, id. at 23-25; and (2) the "presence of extraordinary childhood neglect and abuse," id. at 25-28.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. Our jurisdiction "depends on the basis for the district court's ruling." United States v. Stevens, 223 F.3d 239, 247 (3d Cir. 2000). If we determine that the Court's denial of the departure motion was discretionary, we will dismiss the appeal for lack of jurisdiction because "we are not at liberty to review a discretionary denial." United States v. Lofink, 564 F.3d 232, 240 (3d Cir. 2009); see also United States v. Jackson, 467 F.3d 834, 839 (3d Cir. 2006) ("[A]s it was pre-Booker, courts of appeals post-Booker, have no authority to review discretionary denials of departure motions in calculating sentencing ranges.").[2] Thus, we must first determine whether the Court denied the motion based on its exercise of

---

[2] We necessarily exercise de novo review of an argument that we lack appellate jurisdiction. Montanez v. Thompson, 603 F.3d 243, 248 (3d Cir. 2010).

discretion, or if instead the Court believed the law barred it from granting the motion. Lofink, 564 F.3d at 240. [3]

### III.

We examine the entire record, not just the court's words, to determine if the sentencing court was exercising its discretion when it denied the motion for departure. Jackson, 467 F.3d at 839. In this case, while the District Court did not expressly say so, the record shows that the District Court's denial of the downward departure motion was the result of its exercise of discretion. See id. at 840 (We "infer meaning from the District Court's actions in [the] circumstance."). First, "[t]here is nothing . . . to indicate that the Court was acting under the mistaken belief that it lacked the discretion to reduce the [offense level] under the evidence before it." United States v. Jones, 566 F.3d 353, 366 (3d Cir. 2009) (internal quotation marks omitted). Second, the Court stated its decision on departure in discretionary—not compulsory—terms: "And I have certainly taken into consideration the Guidelines, the variances and departures. I'm not going to grant a departure. Those [motions] are denied." App. 248. Third, the Court's actions reflect its awareness of its discretionary authority. The Court heard extensive testimony on the subject matter of the motion, thoroughly analyzed the evidence relevant to a departure and a variance, recognized that both were sought, and concluded that a

---

[3] A departure is "the altering of a Guidelines range . . . based on reasons provided by the Guidelines themselves." Lofink, 564 F.3d at 238 n.14 (internal citation omitted). By contrast, a divergence from the final Guidelines range based on the factors listed in section 3553(a) is called a "variance." Id.

5

downward departure from the advisory guidelines was not appropriate, but that a variance from the advisory guideline sentence based upon section 3553(a) was warranted.

Fourth, the parties informed the District Court of its authority to depart. See Jackson, 467 F.3d at 840 (holding that when the Government implicitly recognized the Judge's discretion by arguing that a defendant had not shown extraordinary acceptance of responsibility, "[t]his was enough for the Judge to have recognized the possibility of a departure in calculating the Guidelines range on the basis of [the defendant's] acceptance of responsibility."); cf. United States v. Mummert, 34 F.3d 201, 205 (3d Cir. 1994) ("Since . . . the government apparently acknowledged at the time of sentencing[ ] that a downward departure for 'diminished capacity' is permissible under some circumstances, it seems quite likely that the district court's refusal to depart on this ground was discretionary."). During the sentencing hearing, defense counsel twice expressly discussed the Court's discretion under the Sentencing Guidelines.[4] Defendant's sentencing memorandum also clearly stated that the Court had discretion to depart downward. Implicitly acknowledging the Court's discretion to depart, the Government contended that the factors Canyon argued warranted a departure in fact demonstrated that "Mr. Canyon's prospects for [rehabilitation in] the future are, indeed, dim," and therefore a Guideline sentence was appropriate. App. 242. Cf. Lofink, 564 F.3d at 240 (vacating a sentence where the court could not infer from the record whether the district court's

---

[4] Canyon stated that the District Court was "permitted to do anything under the Guidelines. The Guidelines are now advisory . . . ." App. 204. Later, Canyon acknowledged, "Your Honor[] may say that [Canyon's intellectual ability] has nothing to do with sentencing and that's fine. That's Your Honor's . . . discretion as the Judge." App. 207-08.

6

denial of a departure motion was discretionary, in part because "the government . . . argued to the District Court that [the defendant] was not eligible for [the] departure").

In short, we can infer that the District Court was aware of its discretionary authority and exercised its discretion in declining to depart. Because we conclude that the Court was aware of its authority to depart and exercised its discretion not to do so, we are not "at liberty" to review its discretionary decision. Id.

**IV.**

For the foregoing reasons, we will dismiss the appeal for lack of jurisdiction.