NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1577
_____

UNITED STATES OF AMERICA

v.

KETISHA ILES,

Appellant
_____

On Appeal from the District Court
of the Virgin Islands
(D.C. No. 1-14-cr-00051-001)
District Judge:  Honorable Raymond L. Finch
_____

Argued May 24, 2018
Before:  KRAUSE, ROTH and FISHER, *Circuit Judges*.

(Filed: October 24, 2018)

Anthony R. Kiture, Esq. [ARGUED]
Kiture Law Firm
1009 North Street, Suite B
Christiansted, VI 00820
        *Counsel for Appellant*

Rami S. Badawy, Assistant United States Attorney
Rhonda Williams-Henry, Assistant United States Attorney [ARGUED]
Joycelyn Hewlett, Acting United States Attorney
Office of United States Attorney
1108 King Street, Suite 201
Christiansted, VI 00820
        *Counsel for Appellee*

_____

OPINION[*]
_____

FISHER, *Circuit Judge*.

Ketisha Iles was convicted of conspiracy and Hobbs Act robbery. She appeals her convictions, arguing that the District Court erroneously denied her motions to suppress and for judgment of acquittal or new trial. Additionally, she appeals her sentence, arguing that her sentencing hearing was procedurally unreasonable. For the reasons that follow, we will affirm the District Court.

I.

In 2013, Iles participated in a jewelry store robbery on St. Croix, U.S. Virgin Islands. Police Detective Leon Cruz began investigating the robbery and quickly came to suspect a man named Ajani Plante. A few days after the robbery, Detective Cruz spotted Plante driving in a car with Iles. Later in the day, he saw Iles driving the same car—alone this time—and told area police to "traffic stop" her car if they saw it. Iles was pulled over a few minutes later. Detective Cruz introduced himself and asked Iles if she could drive to the police station to answer some questions.

Iles drove to the station. Detective Cruz did not lead, transport, or follow her. As Iles drove, she called her mother and said that the police had stopped her and that she had

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

to go to the station. She asked her mother to meet her there. When Iles arrived at the station, she was escorted into Detective Cruz's office. Detective Fieulleteau came in and out of the office while Iles was answering questions. Iles initially denied any involvement with the robbery. When Iles' mother and stepfather arrived, she spoke with them in Detective Cruz's office.[1] After these conversations, Detective Cruz gave Iles a *Miranda* waiver, which he read to her and she signed. Iles then confessed that she knew about the robbery in advance and helped execute it. Her confession was videotaped.

The testimony of Detectives Cruz and Fieulleteau, which was uncontroverted at the suppression hearing, was that the atmosphere in which they questioned Iles was "calm" and "nice[,] . . . no pressure."[2] They did not make threats or promises, show their weapons, or restrain Iles. The office door was closed but unlocked, and Detective Cruz informed her that she was not under arrest prior to reading Iles her rights.

After a jury trial, Iles was convicted of two counts: interference with commerce by robbery (i.e., Hobbs Act robbery) and conspiracy to commit Hobbs Act robbery.[3] She was acquitted of the other three counts: using and carrying a firearm during and in relation to a crime of violence, conspiracy to use and carry a firearm, and robbery under the V.I. Code.[4]

---

[1] The District Court did not resolve whether Iles also spoke to her mother in the parking lot during that time frame, as Iles' mother asserted.
[2] App. 101.
[3] 18 U.S.C. §§ 2, 1951.
[4] 18 U.S.C. §§ 2, 924(c)(1)(A)(ii), 924(o); 14 V.I.C. §§ 11, 1862(2).

3

In her sentencing memorandum, Iles requested a downward departure for coercion and duress under U.S.S.G. § 5K2.12, arguing that she was in an abusive relationship with Plante, who threatened her if she did not help with the robbery. Iles' Presentence Report recommended a two-level enhancement for a loss between $50,000 and $250,000 based on the store owner's statement that "he believe[d] approximately $100,000 of merchandise was stolen."[5] The District Court rejected the enhancement, decreasing Iles' offense level from 29 to 27 because of a lack of credible evidence to support the loss amount. Iles was sentenced at the lowest end of the Guidelines range, 70 months, followed by three years' supervised release.

## II.

The District Court had jurisdiction pursuant to 48 U.S.C. § 1612 and 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

The issues in this appeal implicate several standards of review. First, "[w]hether a person was in custody for the purposes of *Miranda*, and whether a statement was voluntary for the purposes of a motion to suppress, are conclusions reviewed *de novo*. However, the factual findings underlying the District Court's decision are reviewed for clear error."[6] Second, this Court "exercise[s] plenary review over a district court's grant

---

[5] App. 1016.
[6] *United States v. Jacobs*, 431 F.3d 99, 104 (3d Cir. 2005) (internal quotation marks omitted).

or denial of a motion for acquittal based on the sufficiency of the evidence."[7] We apply the same standard as the district court, "viewing 'the record in the light most favorable to the prosecution to determine whether any rational trier of fact could [convict] . . . based on the available evidence.'"[8] Third, we review a district court's denial of a motion for new trial for abuse of discretion.[9] Finally, we review the District Court's sentencing procedures for abuse of discretion.[10] Where the district court properly exercises its discretion to deny a motion for a downward departure in sentencing, we lack jurisdiction to review the denial.[11]

### III.

### A.

Iles argues that her police station confession was obtained in violation of *Miranda* and *Seibert*, and that the District Court erred in denying her motion to suppress. Based on this alleged error, she also contends that the District Court should have granted her motion for judgment of acquittal or new trial.

Under *Miranda v. Arizona*, "the privilege against self-incrimination is jeopardized"—and warnings are required—"when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is

---

[7] *United States v. Silveus*, 542 F.3d 993, 1002 (3d Cir. 2008).
[8] *Id.* (quoting *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002)).
[9] *Id.* at 1005.
[10] *United States v. Vazquez-Lebron*, 582 F.3d 443, 445 (3d Cir. 2009).
[11] *United States v. Handerhan*, 739 F.3d 114, 121 (3d Cir. 2014).

subjected to questioning."[12] In *Missouri v. Seibert*, the Supreme Court rejected a police tactic meant to evade *Miranda* requirements: that of (1) questioning a suspect until she confesses; (2) giving *Miranda* warnings; (3) leading the suspect to restate her confession; and then (4) seeking to admit only the second, warned statement.[13]

At the threshold, a *Miranda* warning is required "only when the person the police are questioning is in custody."[14] Iles argues that she was in custody, and that warnings were therefore required, when she arrived at the police station. The custody inquiry is an objective one that asks whether, evaluating "all of the circumstances surrounding the interrogation,"[15] a "reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave."[16] The District Court found that Iles voluntarily drove to the police station, was permitted to interact with her mother and stepfather, was not restrained or intimidated by the detectives, and was told that she was not under arrest. These factual findings are not clearly erroneous. It is true that station-house interviews "should be scrutinized with extreme care for any taint of psychological compulsion or intimidation[,] because such pressure is most apt to exist while a defendant is interviewed

---

[12] *Miranda v. Arizona*, 384 U.S. 436, 478 (1966).

[13] *Missouri v. Seibert*, 542 U.S. 600, 616-17 (2004) (plurality opinion).

[14] *United States v. Willaman*, 437 F.3d 354, 359 (3d Cir. 2006).

[15] *Howes v. Fields*, 565 U.S. 499, 509 (2012) (quoting *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam)).

[16] *Id.* at 509 (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)).

at a police station."[17] However, given all of the circumstances, the District Court did not err in ruling that Iles was not in police custody for *Miranda* purposes. Furthermore, *Seibert* does not apply because Iles did not make any incriminating statements before she signed the *Miranda* waiver.[18] The District Court did not err by denying Iles' motion to suppress.

Because there was no error with respect to the suppression motion, we reject Iles' arguments that the District Court should have granted her motions for acquittal or new trial. Those arguments are based entirely on her position that her confession should have been suppressed.[19]

## B.

Iles argues that her sentencing was procedurally unreasonable because the District Court did not independently rule on her request for a downward departure. For a sentence to be procedurally reasonable, a district court must show "meaningful consideration of the relevant statutory factors and the exercise of independent judgment."[20] "When imposing a sentence, a district court must follow a three-step process," preferably

---

[17] *Jacobs*, 431 F.3d at 105 (quoting *Steigler v. Anderson*, 496 F.2d 793, 799 (3d Cir. 1974)).

[18] *See Bobby v. Dixon*, 565 U.S. 23, 31 (2011) (per curiam) ("[U]nlike in *Seibert*, there is no concern here that police gave [the defendant] *Miranda* warnings and then led him to repeat an earlier murder confession, because there was no earlier confession to repeat.").

[19] Even if we leave aside Iles' confession, the remaining evidence presented at trial—particularly the jewelry store owner's testimony—would have allowed a rational juror to conclude that Iles was guilty of conspiracy and Hobbs Act robbery.

[20] *United States v. Grier*, 475 F.3d 556, 571-72 (3d Cir. 2007) (en banc).

addressing these steps—known as the *Gunter* steps—separately and in sequence.[21] The court: (1) calculates the defendant's sentence under the U.S. Sentencing Guidelines; (2) formally rules on the motions of both parties and states, on the record, whether a departure is granted and how that departure affects the Guidelines calculation; and (3) exercises its discretion by considering the relevant § 3553 factors, regardless of whether it varies from the Guidelines sentence.[22]

At the sentencing hearing, the District Court addressed the *Gunter* steps out of order when it began by discussing step three, i.e., its authority to vary from the Guidelines. The court said: "I recognize that the [S]entencing [G]uidelines are advisory. I recognize that the . . . [G]uidelines require me to consider some factors in your case. Those factors are reflected in what we call the [§] 3553 factors."[23] The District Court then addressed *Gunter* step one. It discussed the Guidelines sentence calculation and decreased the offense level by two points because there was insufficient evidence to support the amount-of-loss enhancement.

Next, the court stated: "I recognize that I have the authority to vary your sentence, but I decline to do so, having already in my initial calculation decreased it by two levels. The sentence . . . is one that I can only say is required by the statute and . . . the guideline

---

[21] *See, e.g.*, *Handerhan*, 739 F.3d at 120.
[22] *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006).
[23] App. 1085-86.

range."[24] The Government argues, and Iles concedes, that the District Court misspoke when it said, "I have the authority to *vary* your sentence," and that it meant to say "depart." Thus, the parties agree that the court ruled on Iles' departure motion—and the record, viewed as a whole, supports the parties' position. The departure motion was front and center throughout the proceedings. It was a central argument in Iles' sentencing memorandum, and it was defense counsel's near-singular focus at the sentencing hearing. Iles and her mother, in their statements to the court, discussed abuse and coercion extensively. The judge asked clarifying questions about the abuse and threats.

On this record, we agree with the parties that the District Court ruled on the departure motion. And because the court said that it "recognized" its "authority to [depart],"[25] we can infer that it declined to exercise its authority and denied the motion as a matter of its discretion.[26] We lack jurisdiction to review that decision.[27]

Iles takes issue with the District Court's statement that it was denying her departure motion because it had "already in [its] initial calculation decreased" her offense level "by two levels."[28] She contends that linking the denial of the departure motion (*Gunter* step two) with the rejection of the amount-of-loss enhancement (*Gunter* step

---

[24] App. 1087.

[25] App. 1087.

[26] *See Handerhan*, 739 F.3d at 121 (recognizing that when we examine rulings on downward departure motions, we have the "ability to 'infer meaning from the District Court's actions'") (quoting *United States v. Jackson*, 467 F.3d 834, 840 (3d Cir. 2006)).

[27] *Id.* at 122.

[28] App. 1087.

one) was "procedural error," and that "conflating the sentencing steps is a ground for remand [and] resentencing."[29] Iles relies on *United States v. Friedman*, but that case is distinguishable. Not only did the district court there fail to "follow the proper order of the steps set forth in *Gunter*," it also skipped two of the three required steps.[30] Here, by contrast, the District Court calculated the offense level to reach the Guidelines range (step one), meaningfully considered the § 3553 factors (step three), and ruled on her departure motion (step two). Addressing the steps in an overlapping fashion, and out of order, may not be ideal. But it does not require remand for resentencing.

IV.

For these reasons, we will affirm the District Court's judgment.

---

[29] Reply Br. 21.

[30] *United States v. Friedman,* 658 F.3d 342, 359 (3d Cir. 2011) (district court failed to "compute a definitive loss calculation or offense level to reach its Guidelines range" at step one and failed to "meaningfully consider § 3553(a)(6)" at step three).